Moreau et al. School Trustees *v.* Grandich et ux.

[75 South. 434, In Banc.]

1. Schools and School Districts. *White and colored schools. White. Colored.*

The marriage statute section 263 of the Constitution, which reads: "The marriage of a white person with a negro or mulatto or person who shall have one-eighth or more of negro blood, shall be unlawful;" is not controlling in fixing the statute of "white" and "colored" within the meaning of section 207 of the Constitution, which provides that "separate schools shall be maintained for the white and colored races." Under this last section the word "white" means member of the white or Caucasian race and the word "colored" means not only negroes, but persons who are of the mixed blood.

2. Schools and School Districts. *Trustees. Appeal from decision. Conclusiveness of remedy.*

Under the school law an appeal from the trustees to the superintendent is not an exclusive remedy. The right to admission to the public schools of the state is a valuable right upon which litigants have a right to a judicial determination.

3. SAME.

    The trustees of schools are not judicial officers and do not exercise judicial functions. They are administrative bodies and while appeals lie from the decision of the trustees to the county superintendent, and from the county superintendent to the state board of education, these appeals deal with administrative matters, and do not constitute *res adjudicata.*

4. SAME.

    Under sections 1 and 2, our Constitution, separating the powers of government into legislative, executive and judicial departments, persons in one department of government cannot exercise the powers of any other department of the government, and there is no provision in reference to school trustees that modifies these provisions.

5. SCHOOLS AND SCHOOL DISTRICTS. *Trustees. Decisions. Effect.*

    While school trustees may determine primarily whether a child is of a white or colored race, its finding is not a judicial determination and does not preclude the courts from determining these facts.

APPEAL from the circuit court of Hancock county. HON. J. H. NEVILLE, Judge.

Petition by Antonio Grandich and wife for mandamus against Charlie Moreau and others, school trustees. From a judgment granting the writ, defendants appeal.

The facts are fully stated in the opinion of the court.

*E. J. Gex,* for appellants.

We will first discuss the first assignment of errors which is: "The court below erred in overruling the demurrer filed by the appellant to the petition filed against them." A careful reading of the petition filed herein will show that all the petition alleges is that the appellee's children are white children and entitled to attend the white school, and that the trustees held a meeting and decided that they were members of the colored race. And taking the petition in its strongest phase, it admits that the determination of the trustees was that the said children were colored children, but that the board was mistaken in its belief because these

114 Miss.—36

children were members of the white race. It has been universally recognized that mandamus will not lie where there is an adequate remedy by appeal or writ of error. 26 Cyc. 173. It has been a recognized specific remedy. *Fremont* v. *Crippen,* 10 Cal. 212, 70 Am. D. 711; *Board of Police* v. *Grant,* 9 Smedes & Marshall, 77, 47 Am. D. 102; *Moody* v. *Fleming, etc.,* 4 Ga. 115, 48 Am. D. 210; *Louisville & New Albany R. R. Co.* v. *state, ex rel. McCarty,* 25 Ind. 177, 87 Am. D. 358; *People* v. *Corporation of Brooklyn,* 1 Wendell 318, 18 Am. D. 502; *State* v. *McCrillus,* 4 Kan. 214, 96 Am. D. 169; *People* v. *Olds,* 3 Cal. 167, 58 Am. D. 398; *Reading* v. *Commonwealth,* 11 Penn. 196, 21 Am. D. 534; *King William* v. *Munday,* 2 Leigh 165, 21 Am. D. 604.

Mandamus is not the proper remedy where the statute has expressly provided another adequate remedy. *Louisville & New Albany R. R. Co.* v. *State ex rel. McCarty,* 25 Ind. 177, 87 Am. D. 358. To entitle one to the right of mandamus, two things must appear: First, that relator or petitioner has a clear legal right to the right asked for; and second, that the law affords no other adequate remedy to secure the performance of the duty which is sought to coerce. *Stegmaier* v. *Goeringer,* 218 Pa. 499, 11 Ann. Cas. 973; *State ex rel. Ellis* v. *Atlantic Coast Line Railroad Company,* 53 Fla. 650, 12 Ann. Cas. 359; *State ex rel. Rainwater* v. *Ross et al.,* 245 Mo. 36, 149 S. W. 451, 30 Ann. Cas. 1913E. 978. Mandamus is an extraordinary writ and is not to be resorted to where the purpose sought to be accomplished by it, can otherwise reasonably be accomplished. *McHenry* v. *State,* 91 Miss. 562, 44 So. 831.

The extraordinary writ of mandamus will not be granted to correct mere errors of judgment committed by the board so long as it acts within the authority conferred by statute. It is evident that the right of mandamus should not be granted, and will not be granted, where there is a right of appeal given or can be taken. The petition in this case alleges that the

children of these petitioners were given a trial by the board of trustees, and that the determination of this board was against the petitioners; and petitioners allege that these members of the board erred in their judgment. There is no complaint as to fraud, nothing said about dishonesty on the part of the members of the board. Admitting or conceding that the law is that an appeal should have been taken, if one is provided for in cases of this sort, then the right or legal remedy of these petitioners would be to file an appeal. We earnestly contend that in all matters pertaining to schools that the proper remedy is prescribed in the Code. Section 4503, Mississippi Code, provides: "To settle disputes in schools. In all controversies arising under the school law, the opinion and advice of the county superintendent shall first be sought, from whose decision an appeal may be taken to the state board of education upon a written statement of the facts, certified by the county superintendent or by the secretary of the trustees."

Section 4487 provides: "To decide appeals. The board of education shall decide all appeals from the decisions of county superintendents, or from the decisions of the state superintendent; but all matters relating to appeals shall be presented in writing, and the board's decision shall be final."

Then the remedy of these appellees or petitioners should have been an appeal to the State Board of Education, and then the decision of that board shall be final. There is no case in our courts that we can now recall similar to the case at bar.

This court had before it the case of *Hobbs* v. *Germany,* 94 Miss. 469, 49 So. 515, and in that case the question was raised as to whether or not an injunction was the proper remedy and it was contended that an appeal should have been taken. The Hobbs case was disposed of on the ground that the statute providing for an appeal, did not apply for the reason that the

trustees had no right to pass any such order as they passed. So that this question was not covered by the Hobbs case.

In 26 Cyc. 284, we find this: "The writ of mandamus will lie to compel the admission to school of duly qualified pupils, or to reinstate them in case of illegal expulsion. But the writ will be denied where the right to admission is not clearly established, where expulsion or refusal of admission was made in the exercise of discretionary powers vested in the school authorities and not arbitrarily, where the issuance of the writ would be useless and of no substantial benefit to the petitioner, or where there is an adequate remedy by appeal." The statute in this state gives complete remedy for appeal, and this remedy was not exhausted. We have been able to find one case which is practically on all fours with the case at bar, being the case of *Eubanks et al.* v. *Boughton,* 36 S. E. 529.

The pleading as drawn up and the issues were solely as to whether or not the children that sought to attend the school were members of the colored race. It was contended in the argument of counsel for appellee, that if these children had less than one-eighth degree of colored blood that they were members of the white race; and this was drawn from our marriage statute, section 263 of the Constitution. While it was contended by the appellant that no such recognition was made by the Constitution, but that notwithstanding the court would take such a view as to the degree of colored blood to establish a negro, yet these children had one-eighth degree of colored blood in them, and as such, no matter what view the court took these children should have been kept from the white school. At the outset we might say that it is universally recognized that the legislature can establish separate schools for the white and black. 35 Cyc. 819; 35 Cyc. 1111. So that on this ground the peremptory instruction was wrong. As to whether or not this court will say that anyone

with a degree of colored blood amounting to over one-eighth is entitled to go to the white school or not, we do not believe would figure in this case, for the reason that our contention is that the proof shows according to our theory, that these folks who sought admission to the schools have one-eighth of colored blood.

We know full well that the word colored has a meaning and can this court say that when the makers of the Constitution used the word colored that they used it meaning any thing other than the usual common acceptation of said word. In the Standard Dictionary of the English Language, the word colored is defined as follows: "Of a dark skinned or noncaucasian race; specifically, in the United States. Of African decent, wholly or in part. Originally the epithet was applied only to those of mixed blood, making three classes of inhabitants, white, black and colored," and further definition of said word see State v. Treadway, 126 La. 300, 52 So. 500.

In 7 Cyc. 400, we find the word colored person defined as: "Not a phrase of art, but often applied to black people, Africans, or their descendants, mixed or unmixed; persons of African descent or negro blood; persons of the negro race; persons who have any perceptible admixture of African blood." If we take the above definition as a guide we are bound to come to the conclusion that the makers of the Constitution intended this word to mean exactly what it was commonly known to be and the courts will, of course, take judicial knowledge that when the framers of the Constitution met and framed this immortal instrument that the foremost thing that they had in mind was to disfranchise the negro, and provide a scheme for the separation of the races. Can it be said now that when this word colored race or colored people was used that the makers of that Constitution did not mean by that word what it is understood to mean. Lee et al. v. New Orleans Great

*Northern Railroad Company,* 125 La. 236, 51 So. 182; *Mullins et al.* v. *Belcher,* 142 Ky. 673, 134 S. W. 1151; Ann Cas. 1912D 456.

We contend and contend earnestly, that the demurrer interposed by us to the petition filed against us should have been sustained for the reason that an appeal should have been taken, and not the writ of mandamus; and we further contend that the testimony shows that these children who have sought admission to the white public schools are members of the colored race, and as such should not have been admitted to the white schools of the city.

*J. H. Leathers,* for appellee.

In appellant's brief, the question to be decided by this court arising under the grounds of the assignment of error, relating to the overruling of appellant's demurrer, is whether or not the appellees could invoke the jurisdiction of a court of law by means of a writ of mandamus, or whether the appellees were confined solely to the procedure of appealing from the order of the board of school trustees as contended by appellants in their brief. This is the question that is before this court for determination under the above mentioned grounds of appellant's assignment of error.

Inasmuch as the statute laws of this state should govern this case as well as all other school questions, if the statutes of this state are applicable, we will call the courts attention to the statutory school laws of Mississippi in the first instance, which may have a bearing on this controversy.

Section 4524 of the Code of 1906 provides as follows: "The trustees may suspend or expel a pupil for misconduct, and shall look after the interests of their schools, visit the same at least once during each month by one or more of their members; see that fuel is provided; protect the school property, and care for

the same during vacation, and arbitrate difficulties or disputes between teachers and pupils but either party feeling aggrieved by their decision may appeal to the county superintendent; and from him to the state board of education.''

It will be seen further, by reading the above statute, that the duties and powers of board of school trustees are clearly defined in this section and that the only part of this section of the Code which could possibly have any bearing on the case at bar is that part stating that the board of trustees: ''Shall arbitrate difficulties or disputes between teachers and pupils.'' There is no contention in the case under review, that there was any sort of a dispute between the Grandich children and their teacher or that their teachers ever denied or even questioned their rights to attend the white public school at Bay St. Louis.

Section 4503 of the Code of 1906 provides as stated in appellant's brief as follows: ''In all controversies arising under the school law, the opinion and advice of the county superintendent shall first be sought from whose decision an appeal may be taken to the state board of education upon a written statement of the facts certified by the county superintendent or by the secretary of the trustees.''

We do not presume it will be disputed that this section of the Code relating to county superintendents is to be construed in connection with section 4524 and 4525 in any case arising under the last-named sections, where the duties and powers of school trustees are brought in question. This is true under the invariable rule of law, that statutes relating to the same subject-matter must be construed together, and with reference to each other in interpreting their meaning. It is evident therefore, that if these sections of the Code are construed accordingly to the rule above announced, that section 4503 of the Code can only apply to cases calling for the opinion and advice of the county

superintendent, on a matter presented to a board of school trustees for determination in those instances only, where the school trustees have authority to act, and it should be remembered that this authority and power is expressly defined by the legislature in sections 4524 and 4525 of the Code of 1906.

We differ with appellants further in their contention that the case of *Hobbs et al.* v. *Germany et al.*, 49 So. 515, is not applicable to this case, but we submit that it is all the appellee is concerned with, because in this case it appears that the board of school trustees exceeded their authority entirely and acted without any warrant of law in this instance.

In view of the fact that the powers of boards of school trustees are clearly defined, we ask why should a litigant or the parents of pupils be put to the trouble and expense of appealing from the decision of a board of trustees, acting outside of the scope of its powers as defined by law, to the county superintendent of education who can have no jurisdiction over the matter under the law, and from him to the state board of education, in a case where the board of school trustees had no power or authority to act in the first instance. We submit that the above statement is not one of argument of counsel only, but that it is clear from the reading of sections of the Code above cited, defining the powers and duties of the school trustees and county superintendents of education. Section 207 of the Constitution of Mississippi is as follows: Separate schools shall be maintained for children of the white and colored races.''

It might be urged and correctly so, that as the law making bodies have passed a law for the maintenance of separate schools for the children of white and colored races, that it necessarily follows that some provision has been made or should be made giving to some officer or tribunal the right to enforce that law.

But conceding that this is true in the instant case, without any express provision in the law to that effect defining the powers of boards of trustees, it is certainly true and manifest that it was not the intention and purpose of the framers of the Constitution or of the legislative bodies that enacted the school statutes, to authorize board of trustees and school officials to go further and judicially determine a question of the character of the one involved in this case.

We further say that under our law, even if it be conceded that the board of school trustees, of Bay St. Louis had the right to deny these children the privilege of the white schools, upon the ground that the board concluded that they were of the negro race, then certainly as an inherent legal right and by virtue of our statute, laws controlling the regulations of schools, the appellees then had the right to elect to invoke the jurisdiction of a properly organized court of the land to determine this all important question to any litigants, who may be charged as the result of spite, neighborhood feuds and local vendettas, with having negro blood in their veins. Nowhere does it appear in the above mentioned statutes that it was the purpose of the legislature to deprive the courts of their lawful jurisdiction of such matters and commit the determination of the same, which necessarily involves the determination of purely judicial questions, to official school boards composed of laymen who are unfamiliar with the rules governing the construction and interpretation of laws. The remedy by mandamus is statutory in Mississippi, and is governed by statutes; subject to the construction and interpretation of such statutes as has been made by the court of last resort, as appears by reference to chapter 94 of the Code of 1906, and especially section 3231. We cite again the case of *Hobbs* v. *Germany et al.,* 49 So. 515, also *Brown* v. *Owen* (Miss.), 23 So. 55.

## PEREMPTORY INSTRUCTION.

The next ground of appellant's assignment of error which we mentioned in the first place in this brief is that appellants seriously complain of the action of the learned trial judge in granting the peremptory instruction of the appellees. In order that this court may more easily determine the correctness of the action of the trial court in granting this peremptory instruction, we desire to call the court's attention to the law governing this case according to appellee's theory of it, which the lower court accepted as the correct view of the law, and that is this: Section 207 of the Constitution of Mississippi provides: "Separate schools shall be maintained for children of the white and colored races."

Section 3244 of the Code provides: "The marriage of a white person who shall have one-eighth or more of negro blood, etc., shall be unlawful and such marriage shall be unlawful and void," etc.

It will be perfectly manifest therefore, that the legal position of the appellees, is, that although, under the constitutional provision that separate schools shall be maintained for the white and colored races, that section 3244 of the Constitution above quoted has to be construed with reference to this constitutional provision, under the first facts of this case, and that under the above mentioned statute.

If children have in their veins negro blood of anything less than one-eighth degree, then, their legal status under said section 3244 with reference to their privileges and rights, is that of white people in the eyes of the law; and that they would not belong to the colored race for the purpose of attending the public schools, within the meaning of section 207 of the Constitution. We call the court's attention to the fact that appellants construction of the above mentioned marriage statute would be unreasonable and

contradictory, assuming that the statute is constitutional and valid, which is undenied and not questioned in this case. Under the above mentioned section 3244 a white man may marry legally a woman with anything less than one-eighth negro blood in her veins. They may marry as white people under a license issued to them as white people. Would it not be folly to say nothing of the injustice of it, for the legislature to have thus provided that such marriages may have the legal status of white marriages, and then to have intended that if children are born as the result of such marriage, the court shall hold that they are colored children and of the colored race, and shall not be admitted to the white schools of the state? And yet this is what the courts would have to hold in order to accept appellant's view of the law in this case.

We understand the rule to be with reference to the proper granting of a peremptory instruction, that admitting the truth of all the material facts in evidence in favor of the party against whom the peremptory instruction is granted, that even then, he is not entitled to prevail in the suit under the law notwithstanding the truth of such matters.

We submit therefore that the action of the trial court in overruling appellant's demurrer to appellee's petition, and in granting a peremptory instruction for appellees is correct, and that the judgment of the lower court should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Appellees, Antonio Grandich and his wife, filed a petition for mandamus in the circuit court of Hancock county against appellants seeking to compel them to admit the children of the appellees to the white public school of Bay St. Louis in said county. The petition for mandamus alleges that Grandich and wife were citizens and taxpayers of Hancock county residing in

Bay St. Louis, within a separate school district, and
that the appellants are trustees of the said separate
school district, and that the children of the appellees,
four in number, were at school age and were entitled
to attend the white public school in the said separate
school district. It is alleged that the petitioners, Gran-
dich and wife, were legally married on the 3d day of
October, 1889, in Hancock county under marriage license
issued to them as members of the white race; said
marriage having been performed by a justice of the
peace of said county and state. It is further alleged
that their children had been admitted to the white
schools up until the year 1914, when the trustees ex-
cluded them from the said school upon the idea that
they were members of the colored race. It is further
alleged that the children were all white with a slight
strain of Indian or red blood in their veins, and that the
exclusion of said children from the school resulted in
irreparable damages, humiliation, and disgrace, being
classed as members of the colored race. The appellants
demurred to the petition on the following grounds:
First, the declaration shows that the board of trustees
acted in a judicial capacity in refusing to let the
children of petitioner attend the white schools, and
the court had no jurisdiction to review their acts.
Second, that the declaration attempts to make the
court pass on a matter that had been passed upon
by the trustees and which was a discretionary mat-
ter with the trustees. Third, that the declaration under-
takes to make the court pass upon a matter that the
trustees had passed on judically, and that the declara-
tion shows that no appeal had been taken from the
decision of the trustees to the superintendent of edu-
cation in the manner provided by law. And, fourth, that
the declaration shows on its face that the plaintiffs,
after being refused admission to the school, failed to
take an appeal to the superintendent of education, who
was the party under the law to pass on said appeal.

The demurrer was overruled. Thereupon the school trustees pleaded the general issue, and pleaded specially that the children of plaintiffs have been kept from the white public schools because they belonged to the colored race and had been offered attendance to the colored school and had refused to attend the colored school. On this plea, issue, in short, is joined by consent. The proof on the part of the appellee showed that Christiana Jourdan was a great-grandmother of the children sought to be admitted to school by mandamus, and that Christiana was an Indian, and that she was the wife of a white man, and that the descendants of said party in line to the petitioners for mandamus had each intermarried with the white race. It appears that two of the daughters of Christiana married negroes. The testimony for the trustees was that Christiana, the great-grandmother, was a negro, and that she was classed and associated with the negroes at church and other social gatherings. It appeared that the color of Christiana was what the witness termed as being "griff," or a shade lighter than the negro. As some of the witnesses expressed it, "griff" being a cross between a mulatto and a negro. There was no distinct proof that this color was caused by any infusion of white blood, and the degree of negro blood in the said party was not proven; but the proof went to show that she had negro hair, was dark or ginger-cake color, and that she associated, as far as she associated with any one, with negroes exclusively, and in attendance at church she and her children sat with the negroes. In this state of the evidence, the court granted a peremptory instruction to find for the appellees and granted the mandamus to compel their admission to the white public school.

It appears from the briefs that the circuit judge in passing upon the proposition adopted the theory that the marriage statute, section 263 of the Constitution, which reads as follows: "The marriage of a white per-

son with a negro or mulatto, or person who shall have one-eighth or more of negro blood, shall be unlawful and void," was controlling in fixing the status of "white" and "colored" within the meaning of section 207 of the Constitution, which provides that "seperate schools shall be maintained. for the white and colored races." We do not think the marriage statute has any influence or controlling effect upon this question. Both sections reflected the purpose of the Constitution makers to provide for a separation of the races in the state. The marriage statute fixed the degree or proportion of blood which would permit marriage, and fixed a definite standard for the purpose of preventing the evils of bastardy from falling upon children, as it might do if there was an uncertain standard, was designed to inform, precisely, all persons contracting marriage as to the effect of such marriage; but this does not necessarily make children having less than one-eighth negro blood members of the white race. In the section fixing the separate schools 'for the white and colored races, the Constitution makers must be assumed to have used those terms according to their fixed and settled meaning in this country. The word "white" defined means member of the white or Caucasian race, and the word "colored" means, not only negroes, but persons who are of the mixed blood.

A similar question was before the Kentucky supreme court in the case of *Mullins et al.* v. *Belcher,* 142 Ky. 673, 134 S. W. 1151, Ann. Cas. 1912D, 456. The provision of the Kentucky Constitution there construed reads as follows:

"In distributing the school fund, no distinction shall be made on account of race or color, and separate schools for white and colored children shall be maintained." Const. section 187.

The court construing this provision says:

"Who are 'colored children' within the meaning of the above section? While it may be doubted if appel-

lants' proportion of negro blood is as small as one-sixteenth, it is not contended that it is less. We shall therefore consider the case from this standpoint; that is, that their proportion of negro blood is one-sixteenth. For appellants it is insisted that, in order to constitute a person a 'colored person,' he must not only have an appreciable admixture of negro blood, but must also show the racial characteristics of the negro. In this connection, it is insisted that appellants are as fair as members of the white race, and there is nothing in their personal appearance to indicate the presence of negro blood. In our opinion, however, the question does not depend upon personal appearance. The color of the person may be one means of indicating the class to which he belongs; but the question in its final analysis depends upon whether or not the person has, or has not, an appreciable admixture of negro blood.''

The court held that a person having one-sixteenth of negro blood could not be admitted to a white school.

In the case of *Lee* v. *New Orleans & Great Northern R. Co.*, 125 La. 236, 51 So. 182, the Louisiana court had occasion to construe a statute of that state which required the railroad companies to provide equal, but separate, accommodations for the white and colored races, making it a misdemeanor for any train officer to assign to a coach persons other than the ones for persons of his race. In that case, Sam Lee and his wife were married in Louisiana at a time when it was lawful for a white person to intermarry with a person of the colored race, and there was no doubt as to the validity of the marriage and the legitimacy of the children. In the conclusion of its opinion upholding and finding that the children of this marriage were ''colored'' within the meaning of the Louisiana law involving said statute, the court said:

''On the question of race there is no legal presumption either way. The issue was one purely of fact, to be determined, not only by evidence of the admixture of

negro blood, but by evidence of reputation, of social
reception, and of the exercise of the privileges of a
white man.''

In the case of *Mullins* v. *Belcher,* above cited, there
is a case note in the Annotated Cases 1912D report of
this case, citing many authorities upon the question of
who are members of the colored race, and it appears
that almost the unanimous holding of the courts and
especially of the Southern States, is to the effect that
descendants of Africans are classed as members of the
colored race, regardless of the admixture, as long as
there is an appreciable amount of negro blood found.

In our own state, in the case of *Heirn* v. *Bridault,* 37
Miss. 209, it was held that a colored person embraces all
persons of African descent. See, also, the definition of
''colored'' and ''white'' in Words and Phrases, both
first and second series. We think therefore that the
judge was in error in granting the peremptory instruc-
tion to find for the petitioners and granting mandamus.

It is next to be determined as to whether an appeal
under the school law from the trustees to the superin-
tendent was an exclusive remedy. In our opinion it
is not an exclusive remedy. The right to admission
to the public schools of the state is a valuable right
upon which litigants have a right to a judicial de-
termination. In our view, the trustees of schools
are not judicial officers and do not exercise judicial
functions. They are administrative bodies, and while
appeals lie from the decision of the trustees to the
county superintendent, and from the county superinten-
dent to the state board of education, these appeals deal
with administrative matters and do not constitute *res
adjudicata. Hobbs* v. *Germany,* 94 Miss. 469, 49 So. 515,
22 L. R. A. (N. S.) 983. Under sections 1 and 2 of
our Constitution, separating the powers of goverment
into legislative, executive, and judicial departments,
persons in one department of government cannot exer-
cise the powers of any other department of the govern-

ment, and there is no provision in reference to school trustees that modifies these provisions. There are many cases where proceedings before administrative bodies are analogous to proceedings in courts. They frequently hear and determine facts, but their findings and judgments have no conclusive effect and do not constitute *res adjudicata.* While school trustees may determine primarily whether a child is of a white or colored race, its finding is not a judicial determination and does not preclude the courts from determining these facts.

The judgment of the court is reversed, and the cause remanded.

*Reversed and remanded*