## LANDER v. TOLBERT.

[83 South. 748, In Banc. No. 21010.]

1. EVIDENCE. *Court judicially knows that there is a principal for each school but only one superintendent in district.*

   It is a matter of common knowledge that in a number of separate municipal school districts composed of the larger cities and towns of the state, there are a number of separate schools and that in each one of these schools there is a principal, while for all of the schools there is one superintendent.

2. SCHOOLS AND SCHOOL DISTRICTS. *Trustees of separate school district have management of superintendent elected by them.*

   Under Code 1906, section 4525 (Hemingway's Code, section 7345), the trustees of separate school districts have absolute control and management of the superintendent elected by them and have the right to prescribe his duties, fix his term of office and the amount of his salary and in what manner it shall be paid.

3. SCHOOLS AND SCHOOL DISTRICTS. *Compensation of superintendent and other employees of district not dependent on license.*

   Under Code 1906, section 4525 (Hemingway's Code, section 7345) and Laws 1916, chapter 186 (Hemingway's Code, section 7348), the only employees of a separate school district that are in any wise brought under control or supervision of the county superintendent of education are teachers and principals, and hence the superintendent of a separate school district, librarian, janitor or other employee, need not hold a teacher's license, and they do not need any order from the county superintendent in order to be entitled to their compensation.

4. MANDAMUS. *Proper remedy to compel clerk of separate school district to issue warrant to pay compensation to superintendent.*

   A municipal clerk is a mere ministerial officer, whose duty it is to obey an order of the trustees of a separate school district to issue a warrant in payment for service of a superintendent of the school district, and having failed to do so, the superintendent may compel his obedience to the order of the trustees by mandamus.

APPEAL from the circuit court of Hancock county.

HON. J. H. NEVILLE, Judge.

Petition for mandamus by C. R. Tolbert to compel Sylvan J. Lander to draw and deliver to the petitioner a warrant. From a judgment for petitioner, defendant appeals.

The facts are fully stated in the opinion of the court.

*Robert L. Genin,* for appellant.

The assignment of errors and the grounds set out in the demurrer are practically the same. Will therefore argue the assignments of error numerically as therein set out:

First, "because there is a plain, adequate and speedy remedy in the ordinary course of law." Section 2533 of the Hemingway Code, section 3231, Code 1906, provides that mandamus shall be issued only in the event there is not a plain, adequate and speedy remedy in the ordinary course of law.

The appellee in this case could have resorted to two plain, adequate and speedy remedies in the ordinary course of law. First, if his claim was valid and if he rendered services he could have recovered under his alleged contract in the circuit court for the two months' salary, and second, there is a plain specific remedy provided for by statute, section 7580 of the Hemingway Code which provides: "In all controversies arising under the law, the opinion and advice of the county superintendent shall first be sought, from whose decision an appeal may be taken to the state board of education upon a written statement of the facts certified by the county superintendent or by the secretary of the trustees."

If the statute permitting mandamus is to mean what it says, either of the two remedies above referred to,

121 Miss.—38.

should have been sought before resorting to the extraordinary remedy of mandamus.

In *McHenry* v. *State,* 91 Miss. 562, 44 So. 831, the court said: "Mandamus is an extraordinary remedy and should not be resorted to if the purpose sought to be accomplished by it can otherwise reasonably be accomplished."

If the City of Bay St. Louis was indebted to the appellee, he should have taken that course open to him through the circuit court in an action at law in debt or contract, or he should have appealed to the superintendent of education and from him to the state board of education for the issuance of a pay certificate upon which he would have been entitled to the writ because that certificate would have been tantamount to a judgment of the circuit court. If the board of mayor and aldermen had allowed the claim or if the county superintendent of education had issued a pay certificate, or if a judgment of the court for the amount had been procured, then application for the writ of mandamus would have been appropriate, because it is a mandatory ministerial official duty of the city clerk or secretary to issue the warrant.

But the appellee has two other plain adequate and speedy remedies as above enumerated and his petition for mandamus should have been dismissed. Second, assignment of error: "Because it is not alleged or shown that the plaintiff or appellee presented or procured a pay certificate from the county superintendent of education."

Under our school system, the superintendent of education is elected by the entire people of the county including the municipalities and he has supervision of all the schools of the county. In duties of county superintendent as provided by section 4497, Code 1906, section 7574, Hemingway's Code, paragraph "b" provides for method of issuing pay certificate; paragraph "k"

to carefully preserve all reports of school officers and teachers; paragraph ''l'' to make annual report to mayor and board of aldermen of name, sex and color of teachers, number of months taught by each and the aggregate amount of pay certificates issued to each and all.

Under section 401, Code 1906, section 7578, Hemingway's Code, the city has a certain *pro rata* share of the salary of the county superintendent to pay and he has the supervision of the schools of the separate school districts of the city in the same manner as the schools of the county excepting as to appointing of trustees and contracting with teachers but has supervision and a check over the entire school system and its teachers.

In every section of our school laws pertaining to payment of salaries, the court will notice that the county superintendent must be satisfied that the duties of each individual, whether as teacher, principal or superintendent has been faithfully performed according to law, and when as in section 7574 paragraph ''k'' above referred to ''officers and teachers'' are provided, it evidently means the superintendent of city schools.

Code 1906, section 4563, Hemingway's Code, section 7379, provides that the county superintendent shall not issue a pay certificate for the last month taught until the teachers shall have delivered to him the school register in good order and properly filled out at the end of each month, the teacher shall file a report with the county superintendent before a pay certificate is issued.

The appellee does not contend that his duties do not require him to teach and as a matter of fact he does teach and his title as superintendent gives him that distinction of supervising other branch schools in addition to his duties as teacher. The appellee may contend as he did in the lower court that his title as superintendent of city schools gives him that distinction and removes him from those duties enumerated by statute to

teachers and principals, but whether supervising teachers or teacher he is a teacher just the same under our law and is required to have a license to teach and comply with all laws with reference to teachers as hereinafter more fully explained.

To further show that the schools of the city as a separate school district are under the supervision of the county superintendent and not divorced from the state and county system and these provisions as to teacher applies to the appellee, in section 4525, Code 1906, section 7345, Hemingway's Code, paragraph ''K'' —''but they (trustees of separate schools districts) cannot contract with the principal or teacher who does not hold a license from the county superintendent.

Paragraph ''l'' of the same section provides: ''The secretary of the trustees, shall, within ten days after the close of the term, transmit their report to the county superintendent, and it shall be unlawful for the superintendent to issue pay certificates for the last month's attendance of county pupils until said report is filed with him.''

Also in chapter 186, Laws 1916, section 7348, Hemingway's Code, provides; ''. . . and they (trustees of the separate school district) are hereby authorized to write orders to the clerk of the municipality or to the county superintendent to issue warrants or pay certificates on any available school funds of such school districts.'' Those orders authorized to be directed to the trustee's jurisdiction under the statutes, such as fuel, repair, care, protection and furnishing of the school and those orders authorized to be directed to the county superintendent for pay certificates are for those things under the jurisdiction of the county superintendent such as salaries for all employed under license from the state issued through him and under supervision of the county superintendent as the appellee in this case.

Section 7382, Hemingway's Code, plainly sets out how warrants are issued by the secretary of the city and this honorable court will plainly perceive from that section that the county superintendent must issue a pay certificate for all employed under a teacher's license whether they enjoy the title of superintending teacher or plain teacher.

In section 4565, Code of 1906, Hemingway's Code, section 7381, provides a penalty for failure to make last monthly report by the teacher to the superintendent of education of the county, the penalty being a deduction of twenty per cent of the salary. Could the lawmakers have intended that the teacher called the city superintendent be immune or exempt from reporting and the penalty for failure in so doing.

Again in section 4623, Code 1906, Hemingway's Code, section 7406, provides: "Every teacher in a public school must, before taking charge of a school and one week before closing a term, notify the county superintendent of the fact, naming the day of opening or closing." Every teacher in a public school before taking charge of a school means also the superintendent teacher and the appellee herein; after careful construction of these statutes together, there can be no escape that the appellee is responsible to the superintendent of education of the county and subject to all penalties for failure to carry out the laws for the supervision and control of schools and get his pay certificate from his supervising officer and county superintendent certifying that the appellee is entitled to receive his salary according to contract made by the trustees within the school term out of the school fund which the county superintendent is accountable to the board of mayor and alderman and ultimately to the tax payers and citizens who elect him county superintendent.

It is therefore absolutely necessary under our system for the appellee to get a certificate from the county

superintendent certifying the amount due the appellee and from what funds it should be paid and all other things required by section 4497, Code 1906, section 7574, Hemingway's Code, paragraph 'B.'

Fourth, assignment of error: ''Because the appellant is without authority in law to issue warrants to the petitioner (appellee) without the presentation of a pay certificate from the superintendent of education or an order from the board of mayor and alderman.''

Section 7382, Hemingway's Code, section 4566, Code 1906, provides: ''Upon the presentation of a pay certificate for services rendered as a teacher, duly attested by the superintendent, the clerk of the board of supervisors or the municipality being a separate school district shall issue a warrant on the treasurer for the amount stated in the certificate, the warrant to state upon its face the number of the month, the term during which the services were rendered, as first month, second month, etc., the clerk shall keep a file of the certificates as a part of the official record at his office.''

We contend, that under our system pay certificates is the only authority upon which the secretary or the clerk of the city can issue a warrant upon the city funds in this case. The clerk of the city is a ministerial officer and can only issue warrants where all matters necessary to the allowance and payment of claims have been performed and approved. He has no power of discretion and cannot issue warrants on any funds he wishes or thinks advisable, but this must be first designated and directed by a superior officer. The orders directed to the clerk of the city by the trustees to issue a warrant on the city funds did not contain any information as to which of the several school funds those warrants should be drawn as is necessary under section 7348, Hemingway's Code, and this could not be supplied by the clerk, nor did this order state for what month of the school term these amounts covered.

Section 7328, Hemingway's Code, is mandatory and therein the city clerk is without authority to issue a warrant without first having a pay certificate from the superintendent of education. If the appellee has a right to the writ of mandamus he has sued the wrong official and should have applied for it against the county superintendent of education to issue the appellee a pay certificate.

Fifth assignment of error: "Because the contract is void between the trustees and the appellee, being a contract for the payment of a monthly salary for months not in the school term, the schools being closed."

Section 4526, Code 1906, section 7345, Hemingway's Code, paragraph "J" gives the trustees the power to elect a superintendent and principal and prescribes their duties and powers, but nowhere do we find power conferred upon the trustees to fix their salaries beyond the months the school is taught. The superintendent, principal and other teachers by no stretch of the imagination can have any duties when the schools are closed during the summer months of June and July and the two months the appellee claims salary his petition fails to show duties performed, being satisfied with the use of the expression "Services rendered." What those services were, does not appear, nor were they apparently explained sufficiently to the county superintendent of education for him to issue a pay certificate.

Paragraph "J" of section above referred to, nor any other paragraph or section of the laws of our state, authorize the trustees of the separate school district to contract or employ a superintendent of the city school and relieve him from any of the duties for which all the teachers are accountable to the officers of the county and state.

Paragraph "J" means only that the trustees have the power to elect one of the teachers as superintendent who shall be the superintendent or head teacher of all

the city schools and a principal for such school who shall be the head teacher of that school for which he is elected and prescribe their powers and duties in and about the school, but this honorable court will in no section of our school law find that the superintendent and principal teachers are entitled to their warrant on any funds of the city unless they do something set out for them to do by statute and that is teach or supervise those that do teach and procure their pay through a certificate issued by the proper official which is the county superintendent of schools who issued him his license to teach.

Under the school laws and the common understanding of mankind, the appellee is as much a teacher as under military law a lieutenant, a captain, or a major in the army are all soldiers; and under our state laws the chief justice of the supreme court is a judge and the speaker of the House of Representatives is a legislator and where there are no special provisions for payment of salary at different times than the others he or they are controlled by the same rules, regulations and conditions precedent before he can be paid.

We do not suppose that appellee will contend that he is not a teacher and exempt from the procurement of a license as provided by paragraph "K," section 4525, Code 1906, section 7345, Hemingway's Code.

The statute authorizing the trustees to elect a superintendent and principal carries all the requirements and duties of those in charge of a school or schools with reference to reports, license qualifications and pay provided for by general law controlling our public schools and creates no special privilege or immunities from our general well-planned universal system and a contract for pay outside of a school term is void.

In conclusion we submit to this honorable court, that if the judgment of the lower court is permitted to stand, out of which school fund will the appellant issue those

warrants as payable? Will not the principal of the schools also be entitled to their pay in the summer months when the schools are closed if the trustees choose to so fix their salaries just the same as the superintendent?

And would not the trustees have the same power to issue an order to the clerk of the city to issue warrants for all other teachers' salaries during the summer closed season of schools?

All contracts by the trustees of the separate school districts are contracts for services and if this case is affirmed and the appellant forced to issue warrants on the city treasury the trustees will of course be prevailed upon not to make flesh of one and fish of the others and as a consequence they will issue all orders to the city clerk to issue warrants for all salaries and none of the teachers will be responsible to the superintendent of education of the county thereby creating a very unsatisfactory chaotic condition instead of a universal system in our public schools.

Section 7320, Hemingway's Code, section 4485, of the Code of 1906, provides: "There shall be maintained a uniform system of free public school for all children between the ages of five and twenty-one years."

We therefore submit to this honorable court that a reversal of this case is necessary to keep within supervision of the country superintendent of education and other state officers, all teachers, whether superintendent of city schools, principals or interior teachers and maintain that uniform system built up by many years of experience and study of the educators and lawmakers of our state.

*McDonald & Marshall,* for appellee.

Mandamus was resorted to by the petitioner under the provisions of section 3231 of the Code of Mississippi of 1906, section 2533 of Hemingway's Code.

Appellant urges here that the remedy was improperly resorted to, because there are, as he contends, two plain, adequate, and speedy remedies in the ordinary course of law; (a) since the "controversy," in a remote sense, arose under the school laws, the petioner should have appealed to the county superintendent of education, and from him, in the event his decision proved adverse, upon a certified written statement of facts (section 4503, Code of 1906, section 7580, Hemingway's Code), to the state board of education, whose decision would be final; and (b) the petitioner should have brought action at law against the municipality embracing the separate school dictrict to recover and collect a judgment *in personam* for the amount of his salary.

(A) We feel that consumption of time with prolonged argument upon the first plain, adequate, and speedy remedy, suggested by appellant, would not be justified by the seriousness of the point. That remedy is not at all a "remedy in the ordinary course of law," it has no applicability to a case of this character. In the sense of that statute, there is involved here no "controversy arising under the school law;" but simply the declination of a municipal clerk, disconnected from the school system, to perform a ministerial duty competently and properly enjoined upon him by the law, and by the orders of the trustees of a separate school district. *Hobbs et al.* v. *Germany et al.* (Miss.), 49 So. 515; *Moreau et al.* v. *Grandich et al.* (Miss.), 75 So. 434; *Kizer* v. *Toms, et al.*, 129 Iowa, 441, 105 N. W. 686, 3 L. R. A. (N. S.) 496; *Perkins* v. *School District,* 56 Iowa, 476, 9 N. W. 356.

(B) The second and other "plain, adequate, and speedy remedy in the ordinary course of law," suggested by appellant as having been open to appellee in lieu of the extraordinary remedy of mandamus, was an action at law against the municipal corporation of the City of Bay St. Louis to recover a judgment *in per-*

*sonam* for the amount of his salary. But how could this have been done? And is it "a plain, adequate, and speedy remedy? The City of Bay St. Louis as a municipal corporation, does not owe petitioner this amount. The employment of petitioner was by the separate school district, acting through its trustees, separate and apart from the municipal government. The theory of the law clearly is that the municipal corporation and the separate school district are not merged into one corporate entity, although their respective borders and populations may, or may not, be coincident (section 4533, Code of 1906, section 7361, Hemingway's Code). The funding of a separate school district system embodied or embraced within a municipality is conducted through the machinery of the municipal government for reasons of conveniences and economy, justified by the identity or interest of the populations of both city and district. But a claim for the salary of a superintendent of schools of such separate schools district, is not, in legal effect, a claim against the municipal corporation, any more than a claim for the salary of a superintendent of a rural separate school district would be a claim against the whole county in which the district might be situated; though for reasons of convenience and economy the funds of the municipal separate school district are kept in, and the salary of the superintendent of schools paid out of, the municipal treasury, upon a municipal warrant drawn by the municipal clerk on the order of the school trustees, but not directed to be issued by the governing board of the municipality. How could such a judgment be obtained plainly and adequately, and its payment enforced, against the city, as a municipal corporation? *Swan* v. *Buck,* 40 Miss. 268; *Kelly* v. *Wimberly,* 61 Miss. 548; *Klein* v. *Smith County,* 54 Miss. 254; *Brandt* v. *Murphy,* 68 Miss. 84, 8 So. 296; *Ross* v. *Wimberly,* 60 Miss. 345; *Hebron Bank* v. *Lawrence County* (Miss.), 69 So. 209, 19 American

and English Encyclopedia of Law (92 Ed.), 787 and 798.

We beg leave to quote the exceedingly apt language of the learned editor of the L. R. A. in his monographic note, pages 331 and 332, L. R. A. 1916, expressing the doctrine that obtains in Mississippi: "The courts are practically unanimous in holding that an action against the city on the claim is not adequate within the meaning of the term as used in this connection. Such action is not against the same party, does not afford the same relief, as mandamus, and, in the absence of a statute providing some other means of enforcing a judgment against a municipality, leaves the holder of a claim still in need of a warrant and at the mercy of the same officer who now refuses to issue one."

Apart, separate, distinct and disassociated from the rural or county system of public schools, section 4525, Code of 1906 (section 7345, Hemingway's Code), prescribes and enumerates the powers and duties of the trustees of separate school districts.

Thus, in separate and distinct subdivisions of the sections, they are vested with the power, and obligated, (a) to prescribe and enforce rules for the government of the schools of the district; (b) manage and control the school property within their districts, and to employ janitors; (d) to appoint librarians; in short, to supervise, govern, manage and control the property and business of the schools within their respective separate districts; and to do and perform all manner of things reasonably necessary to the execution of those powers and the performance of those duties. In subdivision (j) of this section the trustees of the separate school district are empowered and obligated, "to elect a superintendent, if one be required, and a principal for each of the schools, and prescribe their duties and powers." By the provisions of subdivision "k" of the section, the trustees of the separate school district

are required, "to elect teachers, fix salaries, terms of service, contract with them, and impose fines and penalties for neglect of duty, but they cannot contract with a principal or teacher who does not hold a license from the county superintendent."

Why is this distinction made by the legislature? Why should the legislature expressly enact that the trustees of the separate school district "cannot contract with a principal or teacher who does not hold a license from the county superintendent of education," and refrain from inhibition against their election of a superintendent who may not hold a teacher's license? Because the superintendent of the separate school district is neither in law nor in fact a teacher. He is not supposed to teach.

The superintendent of the public schools of a separate school district not being a teacher, but an officer whose duties are to supervise, oversee, and manage, as the agent or representative of the trustees not only the principals, teachers, janitors, and other employees, but also the general business affairs of the public schools of the district his duties no more cease, or his services end, when the actual session of the schools close, than while the schools are open to classes of pupils. The janitor's duties may not then cease; neither may those of the librarian; nor those of the care-taker of the school property; nor those of other employees and officers of the system, merely because the schools may not be open to classes of pupils. The faculty, the curriculum, equipment, and supplies for the next term must, in part, at least be engaged and arranged during the summer months; of necessity, many of the details of this work must be left by the trustees to the superintendent, whose general oversight, superintendence, and advice they have sought. It cannot with seriousness be maintained that the legislature intended that the janitors and librarians may be compensated

for services rendered when the schools are not in session and the superintendent, who is not only doing other important work, but who is also supervising theirs, cannot be compensated.

For the reasons, the legislature has left to the sound discretion of the trustees of the separate school district a determination of all questions of school management, the necessity for a superintendent, the appointment or election of school employees or officials, their terms of service, and compensation, with the sole restriction that the principal or teacher contracted with by them must hold a license from the county superintendent of education, and even this statutory requirement for a principal or teacher has been eliminated by amendment, so far as the county superintendent is concerned, so that, in lieu of a license from him, the principal or teacher may have or hold a license issued by the state board of examiners or a diploma from the Industrial Institute and college, or the state university, or college of other states; or a license issued upon a certificate from other states, sections 7789-7791, inclusive, of Hemingway's Code, or a professional license issued by the state board of examiners, section 7816, Hemingway's Code.

In the absence of a showing of bad faith or fraud on the part of the trustees, no interference may be had with an exercise by them of these discretionary powers granted them by the legislature, either as to the terms or as to the compensation of officers and employees of the system, competently appointed or elected by them. In the absence of bad faith or fraud provide for the payment of his salary in monthly installments at the end of each month of service. Im- upon their part, nothing can be found in the laws to restrain or forbid the trustees of the separate school district from electing a superintendent of the public schools of their district for a term of one year, and to

portant work exists for the superintendent of public schools of a separate school district in every month of the year. 35 Cyc. 1079; *Moon* v. *South Bend,* 50 Ind. App. 251, 98 N. E. 153 *Davis* v. *Public Schools,* 175 Mich. 105, 140 N. W. 1001; *Murray* v. *Wilkes-Barre Township School,* 33 Pa. Sup. Ct. 373.

We submit that the learned court below committed no error in deciding that the trustees of this separate school district, had competent authority to elect appellee superintendent of their district for the period of one year, with his salary payable monthly, there being no intimation made of an abuse of discretion, or of fraud on the part of the trustees.

Again, appellant maintains that he was without authority of law to comply with the orders of the trustees of the separate school district, and that the judgment of learned court below, directing the issuance of its writ of mandamus ordering him to do so, was erroneous, because there was presented to him no pay certificate of the county superintendent of education, officially approving and allowing appellee's salary as superintendent of the public schools of the separate district; and because there was adopted and promulgated no order of the board of Mayor and aldermen of his Municipality, directing him to draw and deliver to appellee the warrants upon the municipal treasury.

With great respect, appellee controverts these contentions of appellant. We submit that, under the law, no pay certificate of the county superintendent of education, or order of the board of mayor and alderman, was necessary or required to make valid the orders of the trustees of the separate school district that appellant issue to appellee the municipal warrants in payments of appellee's earned and allowed salary as superintendent of the public schools of the separate school district, and that the absence of such pay certificate of the county superintendent of education and of such

order of the board of mayor and aldermen of the
municipality, constitutes no legal reason or justifica-
tion for appellant's refusal to perform his ministerial
duty of complying with the school trustee's orders to
issue these municipal warrants to appellee.

The expenses of the schools of the separate school
districts, salaries of all types of employees, fuel, equip-
ment furniture, etc., are met by the issuance of the
municipal warrants by the clerk of the municipality
on the orders of the trustees of the district. With
the possible exception, now, of the salaries of principals
and teachers, a pay certificate from the county superin-
tendent of education is neither required nor necessary
to legalize the issuance of the municipal warrants. As
to principals' or teachers' salaries, the trustees have
the power to write orders on the county superintendents
of education to issue pay certificates. Most certainly
the trustees of the separate school district can write
orders directly to the municipal clerk to issue pay
warrants in defrayment of all school bills, and salaries
of school officials and employees; and no pay certificate
of the superintendent of education would be necessary
to require to validate the warrants, save possibly now
as to those for the salaries of principals and teachers.
Section 7348, Hemingway's Code, Laws of 1916, chap-
ter 186.

Appellant throughout his brief contends that the
superintendent of a separate school district, even in the
large city systems is subject to the same qualifications
and required to perform the same duties, not only as
are the separate district school principals and teachers,
but also as are the rural and county public school
principals and teachers. To sustain his contention as
to the superintendent of a municipal separate school
district having to make monthly and term reports, he
relies on sections 4563 and 4565, Code of 1906, sec-
tions 7379 and 7381, Hemingway's Code. Appellee here

most respectfully controverts appellant's contentions
and avers that neither of these sections applies to the
superintendent of a separate school district system in
any manner whatever.    Paragraph "1," section 4525,
Code of 1906; section 7345, Hemingway's Code, pro-
vides for the only reports required of any official or
employee of a separate school district.    Appellee fur-
ther maintains that section 4565, Code of 1906 section
7381, Hemingway's Code, is in no way applicable to a
superintendent of a separate school district, nor even
to the principal or any teacher in a separate school dis-
trict, because the term report required by this section,
is in separate school districts, required to be made
by the secretary of the trustees therein, and the penalty
imposed for failure to make the required report is im-
posed against the separate school district by withhold-
ing the pay for the attendance of county children, and
thus is neither assessed against superintendent, princi-
pal, or teacher, but against the district until the secre-
tary of the trustees shall have complied therewith. Para-
graph "1," section 4525, Code of 1906, section 7345,
Hemingway's Code.

We submit that no law required that the trustees'
order upon appellant to issue the warrants in payment
of appellee's salary as superintendent of public schools
of the district be accompanied by a pay certificate there-
for issued by the county superintendent of education;
or that the trustees' orders be validated by any order
of the board of mayor and aldermen of the municipality
embracing the district;    and that the ruling of the
learned court below to that effect is correct.

SYKES, J., delivered the opinion of the court.

Appellee, C. R. Tolbert, filed a petition for mandamus
in the circuit court of Hancock county against Sylvan
J. Lander.    The petition in substance alleges that dur-
121 Miss.—39.

ing the month of May, 1919, the trustees of the separate school district embraced in the municipality of Bay St. Louis at a regular meeting by proper resolution elected the petitioner, Tolbert, superintendent of the public schools of that separate school district to serve for a period of one year, beginning the 1st day of June, 1919. The salary of the petitioner as superintendent was fixed by the trustees at one thousand, eight hundred dollars per annum, payable in monthly installments of one hundred and fifty dollars at the expiration of each month of service during the year. The petitioner properly accepted the office of the superintendent and immediately entered upon his duties as such and fulfilled them, especially during the months of June and July. On July 9, 1919, the school trustees in regular session approved and allowed the petitioner's salary for June, 1919, and issued a formal written order upon the defendant, who was the secretary and clerk of the municipality of Bay St. Louis, to draw and deliver to the petitioner the municipal pay warrant for the amount of one hundred and fifty dollars. The order was duly signed by the trustees and referred to the laws governing the election and character of the employment of the petitioner. There was sufficient available money in the school fund to be applied to the payment of the warrant thus directed by the trustees to be issued by defendant. The defendant as secretary and clerk of the municipality, however, declined to comply with or to recognize this order of the trustees, and he still so declines. Practically the same proceedings were had and a written order issued by the trustees for the salary of petitioner for the month of July, and the clerk declined to issue the warrant in accordance with the order. The school trustees were notified of the refusal of the municipal clerk to issue these two warrants, and on August 19th passed an order reciting the election of petitioner as superintendent of the public

schools of this district for the salary above mentioned
payable monthly, that the petitioner had served and
earned and was entitled to receive from the treasurer
of the city the warrants for his salary for the months
of June and July at one hundred and fifty dollars a
month, and it was therefore ordered by the board of
trustees that the secretary and clerk of the city be and
he was thereby ordered and directed to issue the munici-
pal warrants of the city for the two months services
above enumerated. A certified copy of this order was
transmitted to the defendant by petitioner, who in a
letter again demanded the issuance of the two warrants
for his salary for June and July. The clerk declined
to issue these warrants, whereupon this petition for the
writ of mandamus was filed by Tolbert, to which peti-
tion there was a demurrer interposed by the defendant.
The grounds of the demurrer are as follows:

"(1) Because there is a plain, adequate and speedy
remedy in the ordinary course of law.

"(2) Because said contract as alleged is void, the
same being for a longer period than the scholastic year.

"(3) Because it is not alleged or shown that the
plaintiff or petitioner presented or procured a pay cer-
tificate from the superintendent of education as pro-
vided by law.

"(4) Because it is not shown or alleged that the
petitioner taught or that the school was in session dur-
ing the period for which petitioner claims salary.

"(5) Because it is not alleged or shown that the
months for which petitioner is claiming salary is within
the scholastic year.

"(6) Because the defendant is without authority in
law to issue warrants without the presentation of a
pay certificate from the superintendent of education or
any order from the board of mayor and aldermen.

"(7) For other reasons to be submitted at the hear-
ing."

This demurrer was overruled, and the defendant declined to plead further, whereupon a final judgment was entered in favor of petitioner.

It is unnecessary to consider in detail the various grounds of the demurrer, as these grounds may be considered under three general heads.

First. Is the superintendent of public schools of a separate municipal school district under the absolute control and management of the trustees of this district? Second. If so, are the trustees empowered to have their orders obeyed with reference to the issuance of warrants for the salary of this superintendent by the municipal clerk or secretary without an order from the county superintendent of eduacation? Third. Was mandamus the proper remedy for petitioner in this case?

Taking these questions up in the above order, section 4525, Code of 1906, section 7345, Hemingway's Code, prescribes the powers and duties of the trustees of separate school districts. Under section J, these trustees are empowered to elect a superintendent if one be required, and a principal for each of the schools, and prescribe their powers and duties. Under this subsection, the trustees have the power to elect a superintendent of all of the schools within this separate school district, and also to elect a principal for each of the separate schools, and prescribe the powers and duties of both the superintendent and the principal. Under subsection K, they have the power to elect the teachers, fix the salaries, terms of office, contract with them, "but they cannot contract with a principal or teacher the county superintendent, the superintendent of all the schools is not required to have a license. In other words, under this section the principal as well as the teachers must have a license to teach school, but no who does not hold a license from the county superintendent." It will be noted here that, while the principal and teachers of the schools must have a license from

such license is required of the superintendent. The
board of trustees have the right to prescribe the duties
to be performed by the superintendent. It is a mat-
ter of common knowledge that, in a number of separate
municipal school districts composed of the larger cities
and towns of the state, there are a number of separate
schools, and that in each one of these schools there is a
principal, while for all of the schools there is one super-
intendent. This superintendent is required to supervise
and look after all of the affairs of these separate schools
in his district, under the instructions of the board of
trustees. In other words, the superintendent is the
executive officer who actively looks after the manage-
ment of the schools under instructions of the trustees.
It was not required that he be a school teacher or have
a license to teach. His qualities consist rather in his
executive ability instead of in his book learning. The
legislature recognized this fact when they provided that
the principal and teachers must have a license to teach,
but omitted this provision from the subsection re-
ferring to the superintendent of the schools. With-
out referring in detail to the various school laws of
the state, from a careful examination of them it is
manifest that there are certain differences in the con-
trol and management of the municipal separate schools
and the rural schools; that the school trustees in the
separate municipal school districts have greater powers
than those in the rural schools; that the county superin-
tendent of education has very little voice in the control
and management of the schools in the separate school
district; he has no supervision or control whatever
over the superintendent of these schools. It is inescapa-
ble from an examination of these laws that the trustees
have the absolute control and management of the super-
intendent elected by them and have the right to pro-
scribe his duties, fix his term of office, the amount of
his salary, and in what manner it shall be paid.

Second. There is nothing in the various school laws requiring the county superintendent of education to issue any order to the municipal clerk for the issuance of any warrants for the payment of any bills or accounts of a separate municipal school disctrict, except those relating to the salaries of the teachers and principal of a school. Under section 4525, Code of 1906, section 7345, Hemingway's Code, these school trustees are given the control and management of the school property and are empowered to employ a janitor, also a librarian, to furnish blackboards and other necessary furniture for the use of the schools. Section 7348, Hemingway's Code, chapter 186, Laws of 1916, expressly provides that these trustees are the custodians of the school property and shall have charge of the erection, repairing, and equipping of buildings, and are authorized to write orders to the clerk of the municipality or to the county superintendent to issue warrants or pay certificates on any available school funds of such school district. The only employees of a separate school district that are in anywise brought under the control of supervision of the county superintendent of education are teachers and principals. As to them the county superintendent may issue his order upon the municipal clerk for the issuance of their warrants; but as to the superintendent, librarian, janitor, or other employees of the district his warrant must be issued on the order of the trustees. In other words, the superintendent is not a teacher; he is not compelled to hold a teacher's license; he is responsible alone to the trustees, and not to the county superintendent, for the performance of his duties. There is no reason, and the law does not so provide, that his salary shall not be paid upon written order of the school trustees. From the powers and duties of these trustees above referred to we think it clear that it was the duty of the munici-

pal clerk to issue these warrants in accordance with the orders of the trustees.

Third. Mandamus was the proper remedy. The clerk is a mere ministerial officer whose duty it was in this case to obey the order of the trustees. Neither the board of aldermen nor the county superintendent of education had the power or authority to give this order. There was no plain and adequate remedy at law. A suit against the municipality was no such remedy. The municipality had not declined to pay it; in fact, through its trustees as a separate school district, it had ordered the clerk to issue the warrant. A suit against the municipality would in reality in this instance have been a suit against this separate school district, which through its constituted authorities had ordered the issuance of the warrant. *Herbon Bank* v. *Lawrence County,* 109 Miss. 397, 69 So. 209; *Moreau* v. *Grandich,* 114 Miss. 560, 75 So. 434.

The judgment of the lower court is affirmed.

*Affirmed.*